# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **AIR ENGINEERS, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-01461-NAD |
| | ) | |
| **TRIUMPH JETS LLC and GLOBAL** | ) | **OPPOSED** |
| **CROSSING AIRLINES, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

**GLOBAL CROSSING AIRLINES, INC.'S MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT AND TO STRIKE CLAIMS FOR DAMAGES AND ATTORNEYS' FEES IN COUNT 1**

COMES NOW Defendant Global Crossing Airlines, Inc. ("GlobalX") and files this Motion to Dismiss the Amended Complaint (the "Amended Complaint," ECF No. 43) and to Strike Claims for Damages and Attorneys' Fees in Count 1 of the Amended Complaint filed by Plaintiff Air Engineers, LLC (the "Plaintiff" or "Air Engineers") under Federal Rules of Civil Procedure 12(b)(6) and 12(f), and in support thereof states as follows:

## INTRODUCTION

The Montreal Convention's structure, meaning, and purpose are focused on defining the legal relationship between consumers and international air carriers so that carriers may operate with full knowledge of the possible damages they may incur and focus, rightly, on passenger safety over convenience. To accomplish this goal, the Montreal Convention sets a legal regime of "limited and predictable damages amounts for airlines." *Bassam v. Am. Airlines*, 287 F. App'x 309, 312 (5th Cir. 2008). Air Engineers is aware of the Convention's preemptive effect and limits on damages, but it continues to assert claims and seek damages that are barred by the Convention's plain terms.

First, Air Engineers' third-party beneficiary breach of contract claim is plainly preempted by the Montreal Convention and barred by contract. Second, Air Engineers improperly relies on unsupported "information and belief" allegations to bring its Montreal Convention delay claim. Those unsupported allegations should be partially dismissed. Third, Air Engineers seeks damages in its Montreal Convention delay claim that are not legally sustainable and should be struck.

## STATEMENT OF FACTS

The Amended Complaint largely repleads Air Engineers' original, now-dismissed complaint against GlobalX, focusing again on a litany of complaints not related to delay or otherwise legally compensable. The Amended Complaint pleads two counts against GlobalX: Count 1, for delay under the Montreal Convention, and Count 5, for third-party beneficiary breach

1

of contract. (Am. Compl. ¶¶ 124-55, 206-22, ECF No. 43.) Air Engineers' claims address the same circumstances as the original complaint: delays in international travel between Birmingham-Shuttlesworth International Airport ("BHM") in Alabama, and La Romana International Airport ("LRM") in the Dominican Republic. (*Id.* ¶¶ 1, 21-24.)

Air Engineers chartered private round-trip flights from BHM to LRM and back through co-Defendant Triumph Jets LLC ("Triumph"). (*Id.* ¶¶ 23-26, 40-46.) Triumph, in turn, engaged GlobalX to operate the international flights using an Airbus A320 passenger jet. (*Id.* ¶ 55.) Triumph and GlobalX executed an "Aircraft Charter Services Agreement" (the "ACSA," attached as **Exhibit A**)[1] for GlobalX to act as the carrier for the chartered flights. (*Id.* ¶¶ 56, 59.)

Multiple issues arose over the course of the flights from BHM to LRM on April 24, 2024, and returning to BHM from LRM on April 28, 2024. Due to a combination of maintenance issues and operational issues at another airport outside of GlobalX's control, the April 24 flight to LRM was delayed several hours. (*Id.* ¶¶ 81-90.) Regardless, Air Engineers' passengers safely arrived in LRM. (*Id.* ¶ 90.) Due to scheduling issues with Customs and Border Patrol ("CBP") at BHM, the original aircraft being declared "Aircraft on Ground" due to maintenance concerns, and the replacement aircraft's windshear sensor alarming during initial takeoff, the return flight from LRM to BHM was rerouted through Miami International Airport ("MIA") and also delayed for several hours. (*Id.* ¶¶ 93-119.) Ultimately, Air Engineers' passengers arrived safely at BHM around 12:30 A.M. on April 29. (*Id.* ¶ 119.) Despite multiple emergent maintenance, safety, and operational issues, GlobalX successfully transported all of Air Engineers' passengers from BHM to LRM and back, as contracted in the ACSA. (ACSA Annex.)

---

[1] As GlobalX addresses more fully in its argument below, it may appropriately rely on the terms of the ACSA here because the Plaintiff relies on it in bringing its third-party beneficiary claim.

The ACSA expressly and unequivocally states that "GlobalX shall not be liable for failure of a flight to depart or arrive according to any predetermined schedule or routing." (Am. Compl. ¶ 66; ACSA § 2(E).) Rather, "the departure and arriv[al] times" in the ACSA "are subject to aircraft routing, gate space, weather conditions, and other operational factors." (ACSA § 2(D).) The ACSA also conclusively establishes that "[n]o person or entity other than the parties shall have any rights, claims, benefits or powers under this Agreement, and this Agreement shall not be construed or interpreted to confer any rights, claims, benefits, or powers upon any third party, including any individual passenger." (*Id.* § 7(A).) It also disclaims any liability, on behalf of either Triumph or GlobalX, to "any passenger, for loss of use or indirect, special, incidental, consequential, or exemplary damages (including without limitation lost profits)." (*Id.* § 6(F).)

## LEGAL STANDARDS

"Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1300 (N.D. Ala. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Well-pleaded factual allegations do not encompass mere 'labels and conclusions,' legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action." *Simple Helix, LLC v. Relus Techs., LLC*, 493 F. Supp. 3d 1087, 1094 (N.D. Ala. 2020).

Federal Rule of Civil Procedure 12(f) permits courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A prayer for relief not available under the applicable law is properly subject to a motion

3

to strike." *Goldshteyn v. Am. Airlines*, No. 23-CV-22910, 2023 WL 9022560, at *1 (S.D. Fla. Dec. 29, 2023) (cleaned up).

## LEGAL ARGUMENT

The Court should dismiss Air Engineers' Count 5 against GlobalX with prejudice and partially dismiss and strike improper allegations in Count 1. Count 5, for third-party beneficiary breach of contract, is preempted by the Montreal Convention and barred by the plain terms of the ACSA. Count 1, for delay under the Montreal Convention, is largely supported by improper "on information and belief" allegations devoid of factual support. Additionally, the Air Engineers' claims for damages other than actual, economic damages incurred for each passenger under Count 1 are barred by the Montreal Convention and should be struck.

**I.     Air Engineers' claim for third-party beneficiary relief for breach of contract is preempted by the Montreal Convention and barred by the terms of the contract on which it relies.**

　　　A. <u>The Montreal Convention provides Air Engineers its sole remedy—to the extent it has any remedy at all—and preempts Air Engineers' common-law claim for breach of contract relating to international air travel.</u>

The Eleventh Circuit has spoken regarding the application of the Montreal Convention to legal claims relating to international travel: "Article 29 of the Convention preempts state law actions falling within its scope." *Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1314 n.4 (11th Cir. 2010). Article 29 of the Convention states that claims "can <u>only</u> be brought subject to conditions and such limits of liability as are set out in this Convention." Montreal Convention, art. 29, Nov. 4, 2003, 2242 U.N.T.S. 309 (emphasis added). The Convention's language, and courts' interpretations of it, are clear. Air Engineers' third-party-beneficiary breach of contract claim against GlobalX is preempted and should be dismissed with prejudice.

The Montreal Convention's preemptive effect applies to contract claims as equally as it applies to tort claims. The Eleventh Circuit, federal courts outside the Eleventh Circuit, and state

4

courts all recognize this black-letter principle. *Eli Lilly*, 615 F.3d at 1314 n.4; *Badar v. Swissport USA, Inc.*, 53 F.4th 739, 744 (2d Cir. 2022) (affirming dismissal of plaintiffs' state law claims, including contract claims, and observing that the Montreal Convention's "federal cause of action is the *exclusive* means for pursuing such claims. Where an action for damages falls within one of the Montreal Convention's three damage provisions, the Convention provides the sole cause of action under which a claimant may seek redress for his injuries.") (emphasis in original; internal quotations omitted); *Mbaba v. Societe Air France*, 457 F.3d 496, 500 (5th Cir. 2006) (holding breach of contract claim regarding baggage fees preempted by the Warsaw Convention and Montreal Protocol No. 4);[2] *Newsome v. Trans Int'l Airlines*, 492 So. 2d 592, 593, 596-99 (Ala. 1986) (affirming trial court's directed verdicts for defendants on plaintiffs' contract claims because their sole "cause of action derived exclusively from the [Warsaw] Convention, and, therefore, all state common law causes of action that might otherwise have been available to plaintiffs are preempted.") (emphasis added).[3]

Precedent could not be clearer. All state-law claims are preempted where the Montreal Convention controls. The Convention provides the sole, exclusive cause of action. State-law

---

[2] The Montreal Convention was preceded by the Warsaw Convention of 1929 on the same subject (international air travel). Where the language of the two treaties "is substantially similar," courts "may look to cases interpreting the Warsaw Convention." *Jacob v. Korean Air Lines Co.*, No. 12-62384-CIV, 2014 WL 243150, at *8 (S.D. Fla. Jan. 13, 2014) (citing *Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1360-61 (S.D. Fla. 2008)).

[3] While the Florida Supreme Court has not expressly ruled on the issue of Montreal Convention preemption, the Eleventh Circuit's opinions and comparable state supreme courts, like Alabama's, confirm that the Convention's preemption applies here. Further, a number of federal district courts have persuasively arrived at the same conclusion. *See, e.g., Carias v. Am. Airlines, Inc.*, No. 23-CV-21606, 2023 WL 6461269, at *4 (S.D. Fla. Oct. 4, 2023) (reciting cases dismissing state-law claims as preempted by the Montreal Convention and finding the Montreal Convention to provide "*exclusive* remedy") (emphasis in original); *Igwe v. Nw. Airlines, Inc.*, No. 05-CV-1423, 2007 WL 43811, at *4 (S.D. Tex. Jan. 4, 2007) (finding that "all of [the plaintiffs'] state-law [contract and tort] claims are preempted by the Montreal Convention and subject to dismissal with prejudice.").

claims asserted alongside Montreal Convention claims that fall within the Convention's scope should be dismissed as a matter of law because they are preempted.

The subject matter of the Amended Complaint is entirely within the Montreal Convention's scope. Article 19 makes clear that it covers all issues relating to such delays:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Montreal Convention, art. 19 ("Delay"). The Amended Complaint deals solely with delays—not total non-performance—in international flights between the United States and the Dominican Republic, both of which are signatories to the Convention. (Am. Compl. ¶¶ 1, 18, 23); *Carias*, 2023 WL 6461268, at *2 (observing that "the United States and the Dominican Republic are both signatories of the Montreal Convention.") (citation omitted); *Badar*, 53 F.4th at 751 (holding that an *offer* of alternate transportation from a carrier precludes a claim for total non-performance, whether the plaintiff accepts that offer or not); *Vumbaca v. Terminal One Grp. Ass'n*, 859 F. Supp. 2d 343, 366 (E.D.N.Y. 2012) ("The cases consider 'delay' under Article 19 to mean that the air carrier properly delivered baggage or persons to the <u>appropriate destination</u> but it did so in a [sic] untimely manner.") (emphasis added); *see also We CBD, LLC v. Planet Nine Priv. Air, LLC*, 109 F.4th 295, 306 (4th Cir. 2024) (holding state-law claims to be preempted even where damages "occurred outside the carriage by air period" because "the events causing the [damages] took place during the carriage by air."). Count 5 should be dismissed with prejudice because it falls within the Montreal Convention's scope and is plainly preempted.

Nevertheless, the Plaintiff continues to push an incorrect legal theory that its third-party beneficiary claim can be saved because the Montreal Convention supposedly "sets a floor, not a ceiling" on damages. (Am. Compl. ¶ 209.) This is wrong for three reasons.

First, the Montreal Convention itself does no such thing. The Convention itself very clearly sets <u>both</u> a floor <u>and</u> a ceiling on damages: "In the case of damage caused by delay as specified in Article 19 in the carriage of persons, the liability of the carrier for each passenger is <u>limited</u> to 4[,]150 Special Drawing Rights." Montreal Convention art. 22(1) (emphasis added). GlobalX will not belabor the point that "limited" means "limited."

Second, while it is possible under Article 25 that a carrier can "stipulate" to higher limits of liability than the Montreal Convention sets, that is not what occurred here. To "stipulate" has a specific legal meaning: parties must demonstrate a clear written intent to waive the Convention's limitations on liability. *Eli Lilly*, 615 F.3d at 1314-17 (holding that parties did not stipulate to waiver of Montreal Convention under multiple agreements where the primary "agreement makes no mention of the Montreal Convention, its predecessor the Warsaw Convention, or to limits on air carrier liability imposed by law," nor did "the face of the air waybill contracts show that the parties intended to incorporate the terms of the service agreement into those contracts.").[4] The Montreal Convention effectively sets a ceiling on liability as a default rule, while Article 25 allows a carrier to exceed that ceiling if it chooses to do so. To the extent Air Engineers claims the Convention sets *no* ceiling on liability at all (*see* Am. Compl. ¶ 159), that assertion is incorrect.

---

[4] The Plaintiff has repeatedly taken the position that Florida law applies to the ACSA, and GlobalX agrees with that assertion with regard to the interpretation of the ACSA's terms. Therefore, *Eli Lilly* (which addresses contract interpretation under Florida law) is on point here. 615 F.3d at 1314. But the determination of what is *necessary* to stipulate to waiver of the Montreal Convention's limits on liability is a matter of federal law because it requires interpretation of a treaty. *Id.*

This matter is therefore simply resolved by the fact that the ACSA does not mention the Montreal Convention at all. Because the ACSA does not mention the Convention and affirmatively waive its protections, GlobalX did not waive the Convention's default rule of limited liability. (ACSA §§ 6-7); *Eli Lilly*, 615 F.3d at 1314-17. Plaintiff's assertion that the ACSA could somehow allow higher limits of liability because it "provides for the application of Florida law and makes no reference to the Montreal Convention" therefore gets the legal analysis backwards. (Am. Compl. ¶ 210.) Rather, because the ACSA does not mention the Montreal Convention at all, it cannot have expressly stipulated to waive the Convention's limits on damages. *Eli Lilly*, 615 F.3d at 1314-17. And even if the ACSA did include such a stipulation, the notion that GlobalX could have intentionally stipulated to waive the limitations of the Montreal Convention with respect to a third party with whom it neither negotiated nor signed a contract is manifestly absurd.

Third, even if the Plaintiff's position were true, the Plaintiff may still only proceed on a Montreal Convention claim alone. Rather than bringing a separate third-party beneficiary claim, the Plaintiff would need to plead stipulated waiver of the Montreal Convention's limits on liability in its Montreal Convention count. *See, e.g., DHL Glob. Forwarding (China) Co. v. Lan Cargo, S.A.*, No. 18-CV-21866, 2019 WL 13067929, at *8-9 (S.D. Fla. June 17, 2019) (observing breach of contract claim was preempted by the Montreal Convention and analyzing potential waiver of limit of liability under Montreal Convention claim). The Plaintiff fails to plead such a waiver.

In sum, Air Engineers cannot escape Article 29's preemptive effect by claiming GlobalX could have contracted to a higher "ceiling" of liability or simply claiming application of state law. As Air Engineers itself has again pleaded, it had no contract with GlobalX. (Am. Compl. ¶¶ 206-22.) GlobalX could not have agreed to a higher limit of liability with Air Engineers when it has no

8

agreement with Air Engineers at all. The Montreal Convention provides the only method of relief that Air Engineers may pursue against GlobalX. Count 5 should be dismissed with prejudice.

> B. <u>Air Engineers cannot recover as a third-party beneficiary under the ACSA because that agreement expressly disclaims the intent to create any third-party beneficiary.</u>

Should the Court find that the third-party beneficiary claim is not preempted, the ACSA's inclusion of terms disclaiming any third-party interests effectively defeats third-party beneficiary claims. *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017). Under Florida law, "a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party." *Id.* (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005)).

In *Wolf*, the plaintiff—a cruise ship passenger injured on a ziplining excursion in Costa Rica—sued the cruise line for breach of a contract as a third-party beneficiary, arguing that he was a third-party beneficiary of the cruise line's agreement with the zipline operator. *Id.* at 798-99. That agreement stated that it "shall not be deemed to provide third persons with any remedy, claim, right, or action or other right." *Id.* Much like Air Engineers, the plaintiff in *Wolf* sought to establish that cruise passengers, like himself, must be the intended beneficiary of the agreement between the cruise line and the zipline operator.[5] *Id.* The district court granted summary judgment for the cruise line, and the Eleventh Circuit affirmed, holding that the agreement at issue did "not express an intent to benefit any third party—instead, it expressly states the contrary." *Id.*

The same result is compelled here. The ACSA contains very similar language: "No person or entity other than the parties shall have any rights, claims, benefits or powers under this

---

[5] *Wolf* does not detail the extent of the plaintiff's argument, but the situation is much the same as presented here: the only plausible argument for third-party beneficiary status would be that the agreement between the cruise line and the zipline operator would not have a purpose other than to provide tours to passengers. *Id.*

9

Agreement, and this Agreement shall not be construed or interpreted to confer any rights, claims, benefits, or powers upon any third party, including any individual passenger." (ACSA § 7(A) (emphasis added).) The only method by which the plaintiff in *Wolf* could plausibly argue that he was a beneficiary of the general ziplining contract is the same argument that Air Engineers peddles here—that the contract "would be incoherent" or "would fail of essential purpose" if Air Engineers was not a third-party beneficiary. (Am. Compl. ¶¶ 216-17.) *Wolf* rejects this argument outright and holds that a disclaimer of third-party beneficiary interest is effective under Florida law.[6]

And the Court may properly rely on the terms of the ACSA on this Motion to Dismiss. "When a document . . . 'is central to the plaintiff's claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss, this Court may consider that document as well.'" *Brown v. Gadsden Reg'l Med. Ctr. LLC*, 748 F. App'x 930, 933 (11th Cir. 2018) (quoting *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015)). Each element is met here. The ACSA is clearly central to the Plaintiff's third-party beneficiary claim for breach of the agreement between Triumph Jets and GlobalX. (Am. Compl. ¶¶ 206-22.) GlobalX has attached the ACSA to this Motion to Dismiss. (*See* Ex. A.) And, finally, Air Engineers never disputes any of the contents of the ACSA. In fact, it pleads the authenticity of the ACSA, acknowledging that "Triumph Jets has conceded that the 'Aircraft Charter Services Agreement' . . . created a contractual relationship between Triumph Jets and GlobalX." (Am. Compl. ¶ 212.)

---

[6] Should Alabama law be applicable to determine third-party beneficiary status because this action was brought in Alabama courts, the outcome is the same, as addressed in GlobalX's original Motion to Dismiss. (ECF No. 22.) "When 'two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy.'" *Brown v. Gadsden Reg'l Med. Ctr. LLC*, 748 F. App'x 930, 933 (11th Cir. 2018) (quoting *Fed. Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d 716, 724 (Ala. Civ. App. 1979)).

The Court may therefore properly rely on the ACSA and its terms to determine that Air Engineers is not entitled to third-party beneficiary status. Those terms make it clear that the ACSA disclaims any intent to create third-party beneficiaries, which must be given effect under Florida (and Alabama) law. Accordingly, Air Engineers' claim for breach of contract under the ACSA as third-party beneficiaries in Count 5 should be dismissed with prejudice. (Am. Compl. ¶¶ 206-22.)

II. **Air Engineers' Montreal Convention claim should be partially dismissed because it fails to properly support multiple allegations.**

Air Engineers' Montreal Convention delay claim in Count 1 should be partially dismissed because several of its allegations fail to state a claim for relief. These allegations—specifically, Paragraphs 137–144, are vague, unsupported conclusions, propped up only by pleading "upon information and belief." (*Id.* ¶¶ 137-44.) Each of these paragraphs is precisely the sort of conclusory allegation that cannot support a claim for relief: they assert that, "[o]n information and belief, Defendants failed to take all measures that could reasonably be required" to meet the flights' original schedule. (*Id.*) But none of these paragraphs provide any factual allegations in support.

Such vague, unsupported, and conclusory allegations are insufficient to defeat a motion to dismiss and should be disregarded. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (stating that courts "do not have to take as true . . . allegations 'upon information and belief'" without specific supporting facts and affirming dismissal of claim); *Price v. Howard*, No. 22-CV-02056, 2023 WL 2767770, at *2 (N.D. Ga. Mar. 31, 2023) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard."). Courts in the Northern District of Alabama have observed that a motion for partial dismissal is the appropriate method to address such deficient pleadings, rather than a motion to strike. *Rudd v. Branch Banking & Tr. Co.*, No. 13-CV-02016, 2016 WL 7177538, at *7 n.11 (N.D. Ala. Aug. 8,

11

2016) (observing motion for partial dismissal to be appropriate method to address insufficient allegations in complaint rather than motion to strike); *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, No. 18-CV-1290, 2020 WL 2198955, at *4 (N.D. Ala. May 6, 2020) (granting motion for partial dismissal with regard to certain unsupported claims in complaint).

Finally, should the Court find partial dismissal of Paragraphs 137–144 of the Amended Complaint not to be appropriate, GlobalX requests that the Court order Air Engineers to provide a more definite statement for the "on information and belief" allegations in those paragraphs so that GlobalX, and the Court, may appropriately be able to respond. Fed. R. Civ. P. 12(e).

**III.    The Montreal Convention expressly limits Air Engineers to the recovery of its actual damages incurred for each passenger, to the extent Air Engineers may recover damages at all, so prayers for relief for the recovery of any other damages under Count 1 should be struck.**

GlobalX cannot be liable to Air Engineers for any damages that were not directly incurred by Air Engineers for each individual passenger. Articles 19 and 22 of the Montreal Convention make this clear. Article 19 states that a "carrier is liable for damage **occasioned by delay**," and Article 22(1) states that "the liability of the carrier **for each passenger** is limited to 4[,]150 Special Drawing Rights." Montreal Convention arts. 19, 22(1) (emphasis added).[7] While the Convention allows a third-party principal to contract on behalf of passengers (such as Air Engineers), it plainly limits recovery for actual damages incurred by or "for each passenger." *Id.* arts. 22(1), 39; *Click 2 Refund Inc. v. Brit. Airways PLC*, No. 19-CV-05399, 2019 WL 6135123, at *5 (C.D. Cal. Nov. 18, 2019) (finding that passengers must sustain economic damages to support Montreal Convention

---

[7] In 2024, a passenger was entitled to delay damages capped at 5,346 Special Drawing Rights (approximately $7,127.18). International Civil Aviation Organization, *International Air Travel Liability Limits Set to Increase, Enhancing Customer Compensation*, https://www.icao.int/Newsroom/Pages/FR/International-air-travel-liability-limits-set-to-increase,-enhancing-customer-compensation--.aspx (last visited Apr. 9, 2025).

12

delay claim and dismissing third party's action brought on behalf of passengers due to failure to plead any actual, economic damages incurred by passengers).

The practical effect of this is simple and straightforward. If a passenger—or a third party acting on a passenger's behalf, such as Air Engineers—incurs specific economic costs to address a delay in international travel, those costs may be recovered (subject to defenses) up to the Montreal Convention's limits. But those costs must be economic, they must be actually incurred, they must be incurred due to the delay, and they must be incurred by or for a passenger. Montreal Convention arts. 19, 22(1); *Click 2 Refund*, 2019 WL 6135123, at *5.

Air Engineers therefore cannot legally recover most of the damages it seeks in Count 1. It cannot seek a recovery of its contract price with Triumph (and certainly not from GlobalX). First, the Montreal Convention does not support refunds where carriers actually complete the underlying travel, even if delayed. *Godun v. United Airlines, Inc.*, No. 16-CV-4869, 2017 WL 11569125, at *4-5 (N.D. Ill. Feb. 15, 2017) (finding claim for damages with a "nexus to financial injury" not to state a claim for delay under the Montreal Convention because Montreal Convention delay claims can only seek redress for actual expenses incurred due to delay). *Godun* found that plaintiffs "do not suffer a financial loss from purchasing the ticket" where the contract was ultimately still performed, just with a delay. 2017 WL 11569125, at *5. Second, such a refund here is not economic damages incurred by or for a passenger and occasioned by delay. Montreal Convention arts. 19, 22(1). Air Engineers' demand for a refund of "nearly a quarter million dollars" in Count 1 should therefore be struck. (Am. Compl. ¶ 147); *Godun*, 2017 WL 11569125, at *5.

Nor may Air Engineers recover damages for inconvenience, such as the damages it purports to seek due to a canceled "reception/welcome dinner." (Am. Compl. ¶ 146.) Again, any damages here were not incurred "for each passenger," and Air Engineers does not allege it incurred costs

13

that any of its passengers would have otherwise incurred due to delay. At any rate, damages for inconvenience are not allowed under the Montreal Convention. *Godun*, 2017 WL 11569125, at *5.

Similarly, Air Engineers may not seek to recover its own lost profits under the Montreal Convention. The plain text of the Convention makes this obvious: because recovery is limited to a specified amount of actually sustained economic damages incurred "for each passenger," there is no mechanism by which Air Engineers can sustain a claim for its own lost profits. Montreal Convention arts. 19, 22(1). Air Engineers was not a "passenger" on any of the flights at issue; it is a corporate entity. (Am. Compl. ¶ 2.) The Court is not required to set aside its "judicial common sense" in analyzing this claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (courts may draw on "judicial experience and common sense" regarding pleadings). Surely, the Montreal Convention does not allow an entity that never traveled on an international flight—indeed, that cannot travel at all—to recover damages for its own lost profits due to the delayed transport of *people*.

At best, the Plaintiff has authority to bring claims on behalf of passengers for whom it has acted as a principal in arranging the flights under Article 39 (and even this is not wholly clear from the Convention's text).[8] *Nowhere* does the Montreal Convention authorize an entity that did not actually travel on the flight to recover lost profits that it claims are somehow the attenuated result of international flight delays *to passengers*. *Click 2 Refund*, 2019 WL 6135123, at *5. Therefore, Air Engineers' demand for lost profits should be struck. (Am. Compl. ¶¶ 149-153.)

Finally, while Article 22(6) allows successful plaintiffs to recover their court fees in certain circumstances, the provision does not entitle Air Engineers to its attorneys' fees. Rather, "the plain

---

[8] The only actual, economic damages that Air Engineers alleges it incurred "for each passenger" are the hotel rooms that Air Engineers purchased "for those customer representatives who requested it" due to long drives home in the early hours of the morning. (Am. Compl. ¶ 148.) These are the sort of actual, economic expenses incurred due to delay that the Convention contemplates as being recoverable, up to Article 22(1)'s limits. *Godun*, 2017 WL 11569125, at *4-5.

14

language of Article 22(6) contemplates an award of attorney's fees and costs only 'in accordance' with the Court's 'own law.'" *Goldshteyn*, 2023 WL 9022560, at \*2 (citation omitted). Because the standard rule in the United States is that parties bear their own attorneys' fees, and "because the Montreal Convention does not create an independent basis on which attorney's fees may be awarded," the Plaintiff is not entitled to an award of attorneys' fees should it prevail on any part of its Montreal Convention claim. *Id.* Therefore, to the extent that the Plaintiff seeks an award of attorneys' fees by requesting "court costs and other expenses of litigation, including interest," such a request should be struck. (Am. Compl. ¶ 155); *Goldshteyn*, 2023 WL 9022560, at \*3 (striking claim for attorneys' fees in Montreal Convention delay claim).

Therefore, the Court should strike the improper damages requested in Paragraphs 146, 147, 149–153, and 155 of the Amended Complaint as they are not actual economic damages incurred for each passenger and are prohibited by Articles 19, 22(1), and 22(6) of the Montreal Convention.

## CONCLUSION

For the reasons stated above, GlobalX respectfully requests that the Court dismiss Count 5 of the Amended Complaint with prejudice because Count 5 is preempted under the Montreal Convention. GlobalX further requests that the Court partially dismiss Paragraphs 137–144 of the Amended Complaint or, in the alternative, order Air Engineers to provide a more definite statement to cure the unsupported allegations in those paragraphs. GlobalX also requests that the Court strike all claims for damages under Count 1 other than actual damages sustained by or for passengers, as permitted by the Montreal Convention. GlobalX further respectfully requests that should the Court grant this Motion to Dismiss, the Court reserve jurisdiction to address any potential claim for attorneys' fees and costs by GlobalX under the Alabama Litigation Accountability Act.

Dated:  April 11, 2025                    Respectfully submitted,

/s/ W. Chambers Waller IV
J. Mark White (ASB-5029-H66J)
W. Chambers Waller IV (ASB-9424-X15S)
WHITE ARNOLD & DOWD P.C.
2001 Park Place North, Suite 1400
Birmingham, AL 35203
adowd@whitearnolddowd.com
cwaller@whitearnolddowd.com
Telephone: (205) 323-1888

and

Benjamin J. Widlanski (admitted *pro hac vice*)
Clayton J. Schmitt (admitted *pro hac vice*)
KOZYAK TROPIN & THROCKMORTON LLP
2525 Ponce de Leon Boulevard, Floor 9
Miami, FL 33134
bwidlanski@kttlaw.com
cschmitt@kttlaw.com
Telephone: (305) 372-1800

*Attorneys for Defendant*
*Global Crossing Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the CM/ECF participant counsel of record.

/s/ W. Chambers Waller IV
W. Chambers Waller IV, Esq.