IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AIR ENGINEERS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:24-cv-01461-NAD |
| ) | |
| TRIUMPH JETS LLC and GLOBAL ) | OPPOSED |
| CROSSING AIRLINES, INC., ) | |
| ) | |
| Defendants. ) | |

### GLOBAL CROSSING AIRLINES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT AND TO STRIKE CLAIMS FOR DAMAGES AND ATTORNEYS' FEES IN COUNT ONE

COMES NOW Defendant Global Crossing Airlines, Inc. ("GlobalX") and files this Reply in Support of Motion to Dismiss the Amended Complaint (the "Amended Complaint," ECF No. 43) and to Strike Claims for Damages and Attorneys' Fees in Count One of the Amended Complaint (the "Motion to Dismiss," ECF No. 46) filed by Plaintiff Air Engineers, LLC (the "Plaintiff" or "Air Engineers") under Federal Rule of Civil Procedure 12(b)(6), and in support thereof states as follows:

### INTRODUCTION

It is a simple fact that a corporate entity cannot physically travel on an airplane. Despite this basic fact, the dismissal of Air Engineers' first complaint, this Court's clear statements at the hearing on the Defendants' motions to dismiss, and GlobalX's consistent position that is reasserted in its Motion to Dismiss, Air Engineers persists in asserting claims that are not supported by the Convention in its third-party beneficiary claim and requests for damages barred by the Convention.

Air Engineers ignores GlobalX's argument that its third-party beneficiary claim in Count Five is preempted by the Convention, therefore conceding dismissal of its claims under the Aircraft

1

Charter Services Agreement (the "ACSA"). Air Engineers also effectively admits that its "upon information and belief" allegations in Count One are unsupported by defending those allegations as an improper, discovery-seeking "fishing expedition." Finally, Air Engineers fails to consider the entire text of the Convention regarding damages, which limits relief to economic damages, due to delay, that are incurred by or for a passenger. Its non-viable damages should therefore be struck.[1]

## **LEGAL ARGUMENT**

I.   **Air Engineers concedes its claim for third-party beneficiary breach of contract in Count Five is preempted and should be dismissed with prejudice by failing to respond.**

Air Engineers fails to respond to GlobalX's argument that its third-party beneficiary claim is preempted under the Montreal Convention, almost certainly because case law in the Eleventh Circuit (and across federal courts) is clear that state-law claims for delay damages are preempted. (Mot. Dismiss at 4-9.) By failing to respond to this argument, Air Engineers has waived any response. *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("When a party fails

---

[1] Air Engineers also devotes a whole subsection of its Response, and several footnotes, to claim a failure to confer where no conferral was necessary or appropriate and to conflate continuing correspondence addressing potential sanctions under the Alabama Litigation Accountability Act with conferrals. GlobalX would not typically present these issues before the Court at all. But, given Air Engineers' misstatements, a correction of the record is warranted. First, neither the Northern District of Alabama's Local Rules nor this Court's Initial Order require conferral on motions to dismiss or to strike legally insufficient pleadings. Second, given Air Engineers' disregard of the Court's statements at the hearing on the Defendants' original motions to dismiss by continuing to assert counts in the Amended Complaint that are clearly preempted by the Montreal Convention, conferral on the Amended Complaint's many deficiencies would have been fruitless. Third, the purported "conferral" letter Air Engineers addresses was GlobalX's reply in an ongoing series of correspondence between the parties, going back to December of 2024, when GlobalX first informed Air Engineers of the deficiencies in its original complaint and requested that Air Engineers withdraw or amend the complaint under the Alabama Litigation Accountability Act. The April 18, 2025, letter was simply a reply supporting GlobalX's position that Air Engineers is blatantly ignoring the restrictions of the Montreal Convention in its pleadings. Should the Court wish to review the entire series of correspondence, GlobalX will provide it; indeed, GlobalX intends to file the entire series of correspondence as exhibits to an eventual motion for sanctions under the Alabama Litigation Accountability Act should Air Engineers not withdraw its clearly improper pleadings in the Amended Complaint.

to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."). GlobalX's Motion to Dismiss Count Five should be granted with prejudice.

The Court need not address Air Engineers' arguments about the impact of the terms of the Aircraft Charter Services Agreement (the "ACSA") because Air Engineers has conceded that Count Five is preempted and should be dismissed. Nevertheless, should the Court consider the ACSA's provisions with regard to third-party liability, it need not convert GlobalX's motion to dismiss into a motion for summary judgment. Air Engineers once again misconstrues the Eleventh Circuit's standard for considering a contract on a motion to dismiss. The Eleventh Circuit's standard is that "[w]hen a document . . . 'is central to the plaintiff's claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss, this Court may consider that document as well.'" *Brown v. Gadsden Reg'l Med. Ctr. LLC*, 748 F. App'x 930, 933 (11th Cir. 2018) (quoting *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015)). Instead of contesting any of the contents of the ACSA, Air Engineers points back to its declaration of counsel from its response to the prior motion to dismiss and asserts that it "knows nothing about the authenticity of the purported" ACSA. (Resp. at 14.) This does nothing to raise a dispute regarding the ACSA's contents. The reality is that the ACSA is the controlling agreement between Triumph and GlobalX, Air Engineers knows it is the controlling agreement, and Air Engineers cannot nor has ever actually disputed the ACSA's contents. (Mot. Dismiss at 9-11.)

Air Engineers also points to allegations in the Amended Complaint that Air Engineers is a third-party beneficiary of the ACSA. These are legal conclusions that are properly ignored on a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (observing that "*Iqbal* instructs us that our first task is to eliminate any allegations in Plaintiffs' complaint that are merely legal conclusions."). Instead, the terms of the ACSA demonstrate that

Air Engineers cannot be a third-party beneficiary. *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798-99 (11th Cir. 2017). Therefore, Count Five should be dismissed with prejudice.

Finally, Air Engineers attempts to revive its preempted third-party beneficiary claim by claiming GlobalX must have waived the Montreal Convention's limits on damages by not mentioning the Montreal Convention in the ACSA. This argument is wrong for a multitude of reasons. First, Air Engineers has conceded that the third-party beneficiary claim is preempted by not responding to that argument, making this attempted rehabilitation moot. Second, Air Engineers fails to respond to GlobalX's argument that the proper place to address any alleged waiver of the Montreal Convention's limits on damages is in the delay claim in Count One. (Mot. Dismiss at 7-9.) Third, Air Engineers argues that the ACSA cannot be considered on a motion to dismiss while simultaneously trying to rely on the ACSA's terms to its own benefit. Fourth, Eleventh Circuit precedent and other federal case law demonstrate that Air Engineers' position is plainly incorrect.

In a misguided attempt to salvage its argument, Air Engineers' assessment of the Eleventh Circuit's opinion in *Eli Lilly* misses the mark. That case holds that an explicitly stated stipulation is required to waive the Montreal Convention's limits on damages. *Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1315-16 (11th Cir. 2010). And the waybills discussed in *Eli Lilly* are directly on point because, in reviewing them, the Eleventh Circuit held that "[t]he air waybill contracts at issue were executed after the Montreal Convention took effect. The parties knew of the limits on air carrier liability and the ways to contract around those limits—declaring a value for the cargo or stipulating to waive the limits. The waybills show that the parties declined to do so." *Id.* at 1316. Because the ACSA makes no mention of the Montreal Convention's damages limitations, it cannot be considered to have stipulated to waive those limits under black-letter Eleventh Circuit precedent. *Id.*

Nor does Air Engineers' cited district court case help its position. Rather, *Danner* expressly states that where a contract does not mention the Montreal Convention, the Montreal Convention—and its limits on damages—apply in full to cargo damaged during international air travel. *Danner, v. Int'l Freight Sys. of Wash., LLC*, No. 09-CIV-3139, 2013 WL 78101, at *16-17 (D. Md. Jan. 4, 2013) (observing that the Montreal Convention applied to international carriage of cargo where the parties' contract addressed the Warsaw Convention but not the Montreal Convention). *Danner* also observes that the Montreal Convention clearly puts a ceiling on damages. *Id.* at *17 ("Although the Montreal Convention imposes strict liability for damage to cargo that occurs during 'carriage by air,' it also contains provisions that limit the amount of a carrier's liability."). In fact, the court found that the plaintiffs' damages for two lost lion trophies from an African safari—for which the plaintiffs paid $35,000 each in trophy fees alone—were <u>limited</u> to the Convention's then-existing cap of $3,302.91 per passenger, and that the Convention applied, not the parties' contract. *Id.* at *21. Count 5 should be dismissed with prejudice.

**II.     Air Engineers fails to provide any viable reason why Count One's improper and unsupported allegations should not be partially dismissed.**

Air Engineers fails to provide any viable reason why Paragraphs 137-138 and 141-144 should not be partially dismissed as unsupported conclusory allegations. For ease of reference, those Paragraphs state as follows:

> 137. On information and belief, Defendants failed to take all measures that could reasonably be required to have an Airbus A320 aircraft at BHM before the originally scheduled 12:00 pm Local Time departure on Wednesday, April 24, 2024.
>
> 138. On information and belief, Defendants failed to take all measures that could reasonably be required to have an Airbus A320 aircraft at BHM before the re-scheduled 2:00 pm am Local Time departure on Wednesday, April 24, 2024.
>
> \*\*\*
>
> 141. On information and belief, Defendants failed to take all measures that could reasonably be required to maintain the original aircraft declared "Aircraft on Ground,"

> rendering this aircraft unable to carry out the scheduled April 28, 2024 flight from LRM to BHM.
>
> 142. On information and belief, Defendants failed to take all measures that could reasonably be required to have an Airbus A320 aircraft at LRM before the originally scheduled 2:00 pm Local Time departure on Sunday, April 28, 2024.
>
> 143. On information and belief, Defendants failed to take all measures that could reasonably be required to maintain the substitute aircraft that had to abort a take-off at LRM on Sunday, April 28, 2024 because the airplane's sensor was reporting wind shear during take-off.
>
> 144. On information and belief, Defendants failed to take all measures that could reasonably be required to make arrangements with ground personnel at BHM in the early morning hours of Monday, April 29, 2024, thus permitting the terminal lights to go out while Air Engineers' passengers were still waiting for their bags on the baggage carousel and causing additional delays so that the lights could be turned back on.

Air Engineers' argument in its Response is insufficient to defeat dismissal: "Amended Complaint paragraphs 137, 138, 141, 142, 143, and 144 are pleaded 'on information and belief' because **it will require discovery** to determine what GlobalX did or failed to do . . . ." (Resp. at 10 (emphasis in original).) What Air Engineers describes here is an improper "fishing expedition." *Dubose v. City of Hueytown*, No. 15-BE-852, 2016 WL 3854241, at *12 (N.D. Ala. July 15, 2016) (observing that "[t]he discovery process should not be a fishing expedition to learn if the speculative, conclusory allegations have any basis in fact."); *Sanders v. Miller Cnty. Sch. Dist.*, 23-CV-192, 2024 WL 3850800, at *4 (M.D. Ga. Aug. 16, 2024) (citation omitted) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions are not permissible under federal discovery rules.").

Partial dismissal of Paragraphs 137-138 and 141-144 of Count One of the Amended Complaint is therefore appropriate here. *See, e.g.*, *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, No. 18-CV-1290, 2020 WL 2198955, at *4 (N.D. Ala. May 6, 2020) (granting motion for partial dismissal with regard to certain unsupported claims in complaint).

**III.     Air Engineers cannot and does not show how any of the claimed damages addressed in GlobalX's motion to strike can be recoverable under the Montreal Convention as economic damages, due to delay, that are incurred by or for a passenger.**

Air Engineers' defenses of its improper damages claims in Count One fail for two reasons. First, Air Engineers misreads the Montreal Convention and the import of the case law cited in GlobalX's Motion to Dismiss. Second, Air Engineers fails to address specific provisions under the Montreal Convention that bar each of the claims for damages GlobalX moves to strike.

A brief review of the text of the Montreal Convention—which Air Engineers does not address at all—is in order. Article 19 states that a "carrier is liable for damage <u>occasioned by delay</u>," and Article 22(1) states that "the liability of the carrier <u>for each passenger</u> is limited to 4[,]150 Special Drawing Rights." Montreal Convention arts. 19, 22(1) Nov. 4, 2003, 2242 U.N.T.S. 309 (emphasis added). Case law confirms that damages due to delay must be economic. *See, e.g.*, *Click 2 Refund Inc. v. Brit. Airways PLC*, No. 19-CV-05399, 2019 WL 6135123, at *5 (C.D. Cal. Nov. 18, 2019); *see also Goldshteyn v. Am. Airlines*, No. 23-CV-22910, 2023 WL 9022560, at *1 (S.D. Fla. Dec. 29, 2023) (striking claim for emotional damages under Montreal Convention). Therefore, to be recoverable under the Montreal Convention, damages must be (1) economic; (2) due to delay; and (3) actually incurred by or for a passenger on the delayed flight.

Case law demonstrates the types of damages do not meet one of the three requirements for recompense under the Montreal Convention. Air Engineers once again misreads GlobalX's cited cases. *Click 2 Refund* stands for the proposition that damages must be actually incurred by a passenger and be compensable rather than hypothetical, statutory, or not actually incurred to be recoverable. *Id.* Like the third-party entity in *Click 2 Refund*, Air Engineers must allege out-of-pocket losses that it actually sustained on behalf of a passenger due to delay to be entitled to relief. *Id.* Other claims for damages will not do.

Similarly, *Godun* stands for the proposition that damages must be economic, due to delay, and actually incurred by a passenger to be compensable. *Godun v. United Airlines, Inc.*, No. 16-CV-4869, 2017 WL 11569125, at *4-5 (N.D. Ill. Feb. 15, 2017). And, crucially, *Godun* identifies several categories of damages that may <u>not</u> be recovered as delay damages under Article 19. Specifically, *Godun* explains why the refund of a ticket price is not compensable under Article 19: "Because United performed on the parties' ticketing contracts, even if the performance was delayed, plaintiff and her minor child did not suffer a financial loss from purchasing the ticket . . . . Consequently, plaintiff's alleged loss of her bargained-for benefit cannot be used as a basis for her to recover a broader swath of damages than permissible under Article 19." *Id.* at *5.

Air Engineers impermissibly seeks a refund of its contract price for the chartered flights here, so *Godun* is directly on point. (Am. Compl. ¶ 147.) A claim for a partial refund is still a claim for a refund, and refunds are not compensable economic damages under the Montreal Convention. *Godun*, 2017 WL 11569125, at *5. Therefore, following *Godun's* analysis, Air Engineers' demand for a refund of "nearly a quarter million dollars" in Count One should be struck.

Air Engineers' demand for reimbursement of the cost of its welcome dinner should likewise be struck. First, Air Engineers cites no case law to support its argument that its alleged damages relating to a welcome dinner are anything other than unrecoverable convenience damages. (Resp. at 7.) Nor does Air Engineers allege that it incurred some new expenses paying for a different dinner for passengers due to delay (which could be actual, economic damages incurred by or for a passenger and due to delay). Rather, it seeks retrospective damages for food that "went uneaten." (*Id.*) This is not a compensable economic damage—if anything, *Godun's* reasoning regarding refunds would be applicable here, too. 2017 WL 11569125, at *5. Air Engineers' claim for damages for the welcome dinner should be struck. (Am. Compl. ¶ 146.)

8

Finally, Air Engineers does not assert a claim for any passenger's lost wages. Nor does it assert a claim for any passenger's lost profits. Instead, it asserts a claim for its own lost profits when it, a legal entity, was not and could not be a passenger on the flights at issue. (Am. Compl. ¶¶ 149-53.) Therefore, *Godun's* reference to a passenger's lost wages as potential economic damages in no way entitles Air Engineers to its own lost (and entirely speculative) profits when it was not itself a passenger on the flight. *Godun*, 2017 WL 11569125, at *4-5. Air Engineers' cited cases similarly deal only with actual passengers who missed days of work due to international flight delays. *Rubin v. Air China Ltd.*, No. 10-CV-05110, 2011 WL 2463271, at *3 (N.D. Cal. June 21, 2011) ("As Plaintiff is presumably paid for his employment, he may be able to prove that he sustained pecuniary injuries from lost work as a result of the flight delay."); *Ikekpeazu v. Air France*, No. 04-CV-00711, 2004 WL 2810063, at *2 (D. Conn. Dec. 6, 2004) ("Plaintiff's allegations of financial injury resulting from the delay in his return to practice provide a basis for a claim under this Article.").

That is not the case here, where a legal entity—which, because it is *not an actual, physical person*, cannot travel on an airplane—is seeking its own lost profits, not a passenger's lost wages.[2] Air Engineers was not delayed in a return to its business, and it did not travel on the flights at issue. *Godun*, 2017 WL 11569125, at *4-5. A non-passenger's lost profits are unsustainable as damages under the Convention because, by definition, they are not incurred by or for a passenger.

The only actual economic damages Air Engineers alleges it has incurred by or for a passenger and due to delay are the alleged costs of hotel rooms for the passengers who stayed

---

[2] Air Engineers completely misses the point of GlobalX's citation to the *Iqbal* allowance for courts to apply judicial common-sense, which is referencing this specific fact: the Court need not let common sense fly out the window in assessing whether a legal entity can actually physically travel on an international flight. (Mot. Dismiss at 14.)

9

overnight in Birmingham on April 29, 2024. (Am. Compl. ¶ 148.) Those claimed damages are still subject to GlobalX's defenses under the Convention, which cannot be addressed here on this Motion to Dismiss.[3] All of the other claims for damages in Count One should be struck because they are legally unsupported. (Am. Compl. ¶¶ 146, 147, 149-53, 155.)[4]

## CONCLUSION

For the reasons stated above and in its Motion to Dismiss, GlobalX respectfully requests that the Court dismiss Count Five of the Amended Complaint with prejudice because Count Five is preempted under the Montreal Convention. GlobalX further requests that the Court partially dismiss Paragraphs 137–144 of the Amended Complaint or, in the alternative, order Air Engineers to provide a more definite statement to cure the unsupported allegations in those paragraphs. GlobalX also requests that the Court strike all claims for damages under Count One other than actual damages sustained by or for passengers as permitted by the Montreal Convention. Finally, GlobalX respectfully requests that should the Court grant this Motion to Dismiss, the Court reserve jurisdiction to address any potential claim for attorneys' fees and costs by GlobalX under the Alabama Litigation Accountability Act.

---

[3] Nevertheless, the evidence in this matter will eventually demonstrate that GlobalX "took all measures that could <u>reasonably</u> be required to avoid the damage or that it was impossible for [GlobalX] to take such measures," as allowed by Article 19 of the Montreal Convention. Montreal Convention art. 19 (emphasis added).

[4] Unexpectedly, Air Engineers takes the position that its demand for "court costs and other expenses of litigation, including interest" does not include a demand for attorneys' fees. (Resp. at 3-4; Am. Compl. ¶ 155.) So long as Air Engineers is estopped from later changing its mind and asserting that the broad language in Paragraph 155 should encompass attorneys' fees, this issue is resolved. Due to the breadth of the language in Paragraph 155, however—which can be read to include attorneys' fees—Air Engineers' demand should be struck to the extent it does not apply with the Convention's terms.

Dated: May 2, 2025

Respectfully submitted,

/s/ W. Chambers Waller IV
J. Mark White (ASB-5029-H66J)
W. Chambers Waller IV (ASB-9424-X15S)
WHITE ARNOLD & DOWD P.C.
2001 Park Place North, Suite 1400
Birmingham, AL 35203
adowd@whitearnolddowd.com
cwaller@whitearnolddowd.com
Telephone: (205) 323-1888

and

Benjamin J. Widlanski (admitted *pro hac vice*)
Clayton J. Schmitt (admitted *pro hac vice*)
KOZYAK TROPIN & THROCKMORTON LLP
2525 Ponce de Leon Boulevard, Floor 9
Miami, FL 33134
bwidlanski@kttlaw.com
cschmitt@kttlaw.com
Telephone: (305) 372-1800

*Attorneys for Defendant*
*Global Crossing Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of May, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all the CM/ECF participant counsel of record.

/s/ W. Chambers Waller IV
W. Chambers Waller IV, Esq.